```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL DISTEFANO,
NICOLE DISTEFANO, and
SHARPIMAGE ENTERPRISES LLC,

                    Plaintiffs,          MEMORANDUM & ORDER
                                         10-MC-0564 (JS)
         -against-
                                         Bankruptcy Case No.:
LAW OFFICES OF BARBARA H. KATSOS,        8-09-76638-reg
P.C., and BARBARA KATSOS,
                                         Adversary Proc. No.:
                    Defendants.          8-10-08131-reg
----------------------------------X
```
APPEARANCES:
For Plaintiffs:     Richard L. Rosen, Esq.
                    John Alexander Karol, Esq.
                    Richard L. Rosen Law Firm, PLLC
                    110 East 59th Street, 23rd Floor
                    New York, NY 10022

                    Lawrence F. Morrison, Esq.
                    Lawrence Morrison, Attorney at Law
                    2 Grand Central Tower
                    140 East 45th Street, 19th Floor
                    New York, NY 10017

For Defendants:     Kenneth Tod Bierman, Esq.
                    Marc R. Wilner, Esq.
                    Callan, Koster, Brady & Brennan, LLP
                    One Whitehall Street, 10th Floor
                    New York, NY 10004

SEYBERT, District Judge:

Pending before the Court is Defendants' motion to withdraw the reference to the Bankruptcy Court. For the following reasons, this motion is GRANTED.

## Factual Allegations in the Complaint

Plaintiffs are Michael Distefano, Nicole Distefano, and SharpImage Enterprises LLC ("SharpImage"), a limited liability company that Mr. Distefano jointly owns with his partner, non-party Franco Tregila. At one point, SharpImage operated three Cold Stone Creamery ice cream parlor franchises. (Compl. ¶ 13.)

By October 2006, the franchises encountered serious financial difficulties. (Id. ¶ 15.) So Mr. Distefano and SharpImage sought legal advice from an attorney, Defendant Barbara H. Katsos, and her firm, Defendant Law Offices of Barbara H. Katsos, P.C. ("the P.C."). (Id. ¶ 16.) Mr. Distefano and SharpImage soon retained the P.C. as counsel. (Id. ¶¶ 17-18.)

The relationship did not go smoothly. According to Plaintiffs, Ms. Katsos and the P.C. provided terrible legal advice. In total, Plaintiffs allege that Ms. Katsos committed six major kinds of errors.

First, she advised Mr. Distefano to shield assets from creditors by forming an irrevocable trust, the Distefano Trust. (Compl. ¶ 19.) But, according to Plaintiffs, she should have known that "the transfers to the Distefano Trust would be ineffective against the claims of Mr. Distefano's creditors." (Compl. ¶¶ 19-21.)

2

Second, she pursued a "Don't Negotiate With Anyone" strategy that precluded Mr. Distefano from favorably settling a claim. (Compl. ¶¶ 23, 24.)

Third, she failed to defend a lawsuit brought against Plaintiffs in North Carolina. She did so because, mistakenly, she assumed that the Distefanto Trust's assets "were 'safe' from creditors," and also wrongly believed that a North Carolina judgment could not be enforced in New York. (Id. ¶ 25.) As a consequence, the North Carolina court granted an "an undefended summary judgment motion" against Plaintiffs. (Id.)

Fourth, she represented Mr. Distefano's business partner, Mr. Tregila, without informing Mr. Distefano that this representation posed a conflict of interest, and without asking him to waive this conflict. (Id. ¶¶ 29-33.) Then, she failed to advise Mr. Distefano that he could seek "contribution" from Mr. Tregila, "in accordance with their agreements and applicable law." (Id. ¶ 34.) As a result, Mr. Distefano "became personally responsible" for SharpImage's liabilities, and has "been unable to pursue or recover anything from Mr. Tregila with respect to these obligations." (Id. ¶ 35.)

Fifth, she failed to commence any action against SharpImage's insurer, the Travelers Insurance Company, to recover damages that SharpImage sustained due to a blackout. (Compl. ¶¶ 37, 38.) As a result, SharpImage's time to file suit

expired, and SharpImage lost any right to insurance proceeds. (Id.)

Finally, Plaintiffs allege that Ms. Kostos failed to properly represent SharpImage in its disputes with its franchisor, Cold Stone. According to Plaintiffs, Ms. Kostos took no action to prevent Cold Stone from terminating SharpImage's franchises. Then, Ms. Kostos failed to commence an action against Cold Stone, even though SharpImage supposedly had several tenable claims against it, such as fraudulent inducement and negligent misrepresentation.

Based on these allegations, Plaintiffs assert claims for breach of contract, legal malpractice, and breach of fiduciary duty. Plaintiffs demand $2,500,000 in damages, plus other assorted relief. They commenced this action in Bankruptcy Court. But Defendants now ask this Court to withdraw that reference.

I. Standard of Review

Under 28 U.S.C. § 157(d), a "district court may withdraw . . . any case or proceeding referred [to the bankruptcy court] on its own motion or on a timely motion of any party, for cause shown." Section 157(d) does not define the term "cause." See Orion Pictures Corp. v. Showtime Networks, 4 F.3d 1095, 1101 (2d Cir. 1993). So the Second Circuit has instructed district courts to consider "a number of factors in

4

evaluating cause" including: (i) whether the claim or proceeding is core or non-core; (ii) whether it is legal or equitable; and (iii) considerations of efficiency, prevention of forum shopping, and uniformity; and (iv) the presence of a jury demand. Id.

II. Plaintiffs' Tardiness

Defendants filed this motion on August 23, 2010.[1] Plaintiffs' opposition papers, if any, were due by September 6, 2010. See E.D.N.Y. Local Civil Rule 6.1(b) (giving 14 days to oppose pending motions). But Plaintiffs did not file their opposition papers until April 12, 2011, more than seven months later. And Plaintiffs make no attempt to explain their tardiness. Defendants now ask the Court to disregard Plaintiffs' opposition papers.

The Court has the discretion to disregard late-filed papers. See generally United States v. Hatfield, 06-CV-0550, 2010 U.S. Dist. LEXIS 46875, at *3-4 (E.D.N.Y. May 11, 2010) (denying motion for reconsideration as untimely, without reaching the merits, because it was filed well-beyond the 14-day deadline). The Court believes this is particularly so when the late-filing party is represented by counsel, the delay is

---

[1] The Court addresses pending motions off an online list prepared by the ECF system. For some unknown reason, the system failed to peg Defendants' application as a pending motion, thereby delaying it from coming to the Court's attention. The Court apologies to Defendants for not addressing their motion sooner.

egregious, and counsel, in addition to not establishing excusable neglect, fails to provide any excuse or explanation for the delay. Here, those factors all tip against considering Plaintiffs' dilatory opposition. So the Court will ignore it.

III. Withdraw Analysis

A. Core or Non-Core?

"A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." Orion Pictures Corp., 4 F.3d at 1101. Ordinarily, the Court does so with the benefit of the Bankruptcy Court's determination. See 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this subsection."). But here, Defendants moved to withdraw the reference before the Bankruptcy Court had the chance to weigh in. And at least some authority holds that the Bankruptcy Court must get first crack at adjudicating what is "core." See, e.g., Off. Com. of Unsecured Creditors of Verestar, Inc. v. American Tower Corp., 05-CV-6268, 2005 WL 3455775, at *2-3 (S.D.N.Y. 2005). The Court must first decide whether it has the power to decide, in the first instance, whether the claims at issue are "core."

The Court finds that it has this power, for three reasons. **First**, although a clear intra-Circuit split exists,

6

the "the weight of authority in this Circuit supports the proposition that a district court may make this determination in the first instance." Joseph DelGreco & Co. v. DLA Piper LLP, 10-CV-6422, 2011 U.S. Dist. LEXIS 10972, at *7-8 (S.D.N.Y. Jan. 26, 2011) (collecting cases); see also Northwest Airlines, Inc. v. Los Angeles, 384 B.R. 51, 56-57 (S.D.N.Y. 2008) (the "majority" position recognizes the district court's authority to opine on the core/non-core distinction). **Second**, "Orion's clear language refutes plaintiff's contention that the core/non-core determination must be made by a bankruptcy judge." VWE Group, Inc. v. Amlicke, 359 B.R. 441, 447-48 (S.D.N.Y. 2007). Specifically, Orion instructs the district court to "evaluate whether the claim is core or non-core" and "make[] the core/non-core determination," but says nothing about waiting for the Bankruptcy Court to decide this issue first. Orion Pictures Corp., 4 F.3d at 1101. And **third**, although some courts have held that "Section 157(b)(3) instructs that the bankruptcy judge [to] make this determination in the first instance," the section's plain text says nothing of the sort. Compare Veyance Techs., Inc. v. Lehman Bros. Special Fin., Inc., 09-CV-8851, 2009 U.S. Dist. LEXIS 113220, at *5-6 (S.D.N.Y. Dec. 3, 2009) with 28 U.S.C. § 157(b)(3). For, although it says that the "bankruptcy judge shall determine . . . whether a proceeding is a core proceeding," it does not say that the bankruptcy judge
7

must make this determination "in the first instance," nor does it preclude the district court from taking the first crack. So there is no clear statutory basis for the minority rule. Accordingly, the Court finds that it has the power to decide whether Plaintiffs' claims are core or non-core.

Exercising this power, the Court concludes that Plaintiffs' claims are non-core. A claim is non-core if "it does not depend on bankruptcy laws for its existence and that it could proceed in a court that lacks federal bankruptcy jurisdiction." N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc., 00-CV-4302, 2000 U.S. Dist. LEXIS 15084, at *5 (S.D.N.Y. Oct. 10, 2000); see also Joseph DelGreco & Co., 2011 U.S. Dist. LEXIS 10972 at *7. Here, Plaintiffs assert state law malpractice, breach of contract, and breach of fiduciary duty claims. These claims do not depend on federal bankruptcy law, and could originally have been brought in state court (or this Court if diversity jurisdiction existed). And, in any event, the crux of Plaintiffs' claims is pre-petition legal malpractice. And it is well-settled that this is a non-core claim. See In re Joseph DelGreco & Co., Inc., 2011 WL 350281 at *3. It follows then that Plaintiffs' claims are presumptively non-core.

The inquiry then turns to whether they might nevertheless be construed as "core" for some reason. If

Plaintiffs had submitted a timely opposition to Defendants' motion, the Court would have considered Plaintiffs' arguments in this regard. As it did not, the Court will consider only the arguments Defendants preemptively raised and rebutted in their memorandum. Of these, the strongest is that Plaintiffs' claim is "core" because Defendants filed a proof of claim with the Bankruptcy Court, thereby subjecting themselves to its jurisdiction. See generally In re Manville Forest Prods. Corp., 896 F.2d 1384, 1389 (2d Cir. 1990). This argument fails, however, because--as Defendants' point out--Plaintiffs' action is not brought as a counterclaim, does not seek expungement of the proof of claim, is brought on behalf of an additional party (SharpImage Enterprises, LLC) not party to the bankruptcy proceedings, and seeks damages ($2,500,000) that are orders of magnitude greater than Defendants' proof of claim ($56,905.87). See Def. Br. at 8; Complete Mgmt. v. Arthur Andersen, LLP, 02-CV-1736, 2002 U.S. Dist. LEXIS 18344 at *11 (S.D.N.Y. 2002) ("no case has suggested that the equitable jurisdiction extends to a counterclaim that is, as here, seventy times greater than the proof of claim"); compare with In re Manville Forest Prods. Corp., 896 F.2d at 1389 (breach of contract claim "core" because it was a "simple objection to a proof of claim").

Consequently, the Court finds that Plaintiffs' claims are non-core.

B.  Legal or Equitable?

Plaintiffs' claims are all common law causes of action that sound in law, not equity. Thus, this factor also favors withdrawing the reference.

C.  Other Considerations

Because Plaintiffs' claims are non-core, the Bankruptcy Court cannot conduct a jury trial. Orion Pictures Corp., 4 F.3d at 1101. So they will have to be withdrawn to this Court prior to trial in any event. As such, there is little point in keeping them before the Bankruptcy Court now. Withdrawal will enable this Court to get more familiar with the relevant facts and law prior to trial. And it will enable both parties to benefit from the Magistrate Judge's familiarity with these kinds of common law causes of action, and his/her expertise in overseeing civil discovery. Accordingly, concerns such as efficiency and the presence of a jury demand also tip towards withdrawing to this Court.

## CONCLUSION

Defendants' have shown "cause" for withdrawing the reference from the Bankruptcy Court. 28 U.S.C. § 157(d). Consequently, their motion for withdraw of the reference to the Bankruptcy Court is GRANTED. The Clerk of the Court is directed to assign a Magistrate Judge to this matter, for the purpose of overseeing pre-trial discovery.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June 15, 2011
Central Islip, New York