**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MICHAEL DISTEFANO and NICOLE
DISTEFANO,

                         Plaintiffs,

             - against -

LAW OFFICES OF BARBARA H.
KATSOS, PC and BARBARA H. KATSOS,

                        Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
CV 11-2893 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Pending before the Court is Plaintiffs' motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure based on Defendants' alleged spoliation of evidence [DE 31]. For the reasons that follow, the Court is temporarily denying the motion, without prejudice, pending a hearing.

**I.    BACKGROUND**

This case was initiated as an adversary proceeding in a Chapter 11 bankruptcy filed by Michael Distefano and Nicole Distefano ("Plaintiffs" or the "Distefanos") in the United States Bankruptcy Court for the Eastern District of New York. The proceeding was withdrawn from the Bankruptcy Court on August 23, 2010. *See* Compl. [DE 1-4]. In the Complaint, Plaintiffs assert claims for breach of contract, negligence/legal malpractice, and breach of fiduciary duty/duty of care against Defendants Barabara H. Katsos and the Law Offices of Barbara H. Katsos, PC ("Defendants" or "Katsos"). *Id*.

According to the Complaint, Michael Distefano and non-party Frank Treglia are owners of SharpImage Enterprises LLC ("SharpImage").[1] *Id*. ¶¶ 12. SharpImage is the franchisee of three Cold Stone Creamery, Inc. ("Cold Stone") ice cream parlors (the "Franchises"). *Id*. ¶ 13. In October of 2006, the Franchises began experiencing financial difficulties due to an extended power blackout in July of 2006 and were having problems meeting their obligations to their creditors. *Id*. ¶ 15. As a result, Michael Distefano sought legal advice from Barbara Katsos and eventually retained her. *Id*. ¶¶ 16-17. Plaintiffs allege that Katsos negligently and ineffectively advised the Distefanos to establish an irrevocable trust (the "Distefano Trust") in order to protect Michael Distefano's personal assets from the creditors of SharpImage. *Id*. ¶ 11. Plaintiffs further allege that Katsos' advice not to negotiate with Michael Distefano's and SharpImage's creditors alienated one of the creditors, Telerent Leasing Corporation ("Telerent"), causing Telerent to sue the Distefanos, SharpImage, and Treglia (the "Telerent Lawsuit"). *Id*. ¶¶ 23-24. As a result of Katsos' alleged negligent representation in the Telerent Lawsuit, Plaintiffs claim to have incurred substantial losses which ultimately led to Plaintiffs' filing for bankruptcy. *Id*. ¶¶ 25-28. Plaintiffs assert additional acts of professional negligence, including (1) Katsos' representation of Frank Treglia without obtaining a waiver of conflict of interest from Plaintiffs, *id*. ¶¶ 29-36, (2) Katsos' failure to pursue an insurance claim on behalf of Plaintiffs for their losses resulting from the July 2006 power blackout, *id*. ¶¶ 37-39, and (3) Katsos' failure to take action to prevent Cold Stone from terminating the Franchises, *id*. ¶¶ 40-48.

---

[1] SharpImage is listed as a plaintiff in the Bankruptcy Court adversary proceeding, but is not a plaintiff in the instant action withdrawn from the Bankruptcy Court.

On February 17, 2012 the Court held a Discovery Status Conference. At that conference, counsel for Defendants advised the Court that Defendant Katsos discarded her computer at some point before this litigation commenced. DE 13. The Court directed Defendant Katsos to provide the Court and Plaintiffs' counsel with an affidavit detailing the circumstances under which the computer was discarded. *Id*. Defendant Katsos provided an Affidavit on March 5, 2012 [DE 15] ("Katsos Aff. I") which contained the following relevant paragraphs:

> From in or about 1998 until sometime in 2009, an individual named Jan Sloboda would from time to time repair my computer(s) when necessary, or if they could not be repaired, dispose of the computer(s) and purchase a new one. I would reimburse Mr. Sloboda for the work he performed and for equipment he purchased for my office, all as an independent contractor. It was my understanding that Mr. Sloboda was self-employed.
>
> At some point after my representations of Mr. DiStefano concluded and prior to 2010, I had to replace the computers in my office as they no longer functioned. I was advised by Mr. Sloboda that they could not be repaired. Mr. Sloboda took the computers from my office and purchased several new computers. Mr. Sloboda advised me that he did not believe any data could be recovered from the computers. I do not know what Mr. Sloboda did with the inoperable computers that he removed from my office. Mr. Sloboda ceased performing any work for me in 2009 or 2010 and I do not know his whereabouts or last known address.
>
> The email address I generally used to exchange email correspondence with Mr. DiStefano during my representation and other email relating to the representation was an AOL address. I recently contacted AOL technical support to inquire if emails from several years ago could be recovered by AOL. I was informed by AOL that they could not recover emails from several years ago for the stated email address.

Katsos Aff. I ¶¶ 4, 6, 8.

After receiving Katsos Affidavit I, Plaintiffs filed the instant spoliation motion.

## II. LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *accord Byrnie v. Town of Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001). A court may impose sanctions against a party who spoliates evidence pursuant to Rule 37(b) of the Federal Rules of Civil Procedure as well as through the Court's inherent powers to control the judicial process and the litigation before it. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002); *West*, 167 F.3d at 779. In situations where sanctions are warranted, district courts have broad discretion in "crafting an appropriate sanction for spoliation." *West*, 167 F.3d at 779; *see Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge . . . ."); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."). The applicable sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West*, 167 F.3d at 779. Stated another way, the selected sanction should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (internal

quotation marks omitted); *accord Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012).

In some instances, the spoliation of evidence "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("*Zubulake V*") (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A sanction in the form of an adverse inference instruction is, however, "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008); *see Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("*Zubulake IV*") ("In practice, an adverse inference instruction often ends litigation - it is too difficult a hurdle for the spoliator to overcome.").

A party seeking sanctions has the burden of establishing "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107 (quoting *Byrnie*, 243 F.3d at 107-12); *accord Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 741 (S.D.N.Y. 2011); *Zubulake V*, 229 F.R.D. at 430.

### III. ANALYSIS

Before addressing the central request for relief, the Court must address two preliminary issues. First, Plaintiffs assert that Katsos Affidavit I is incomplete and not in compliance with the Court's Orders. They therefore seek sanctions "as the Court may see fit" for this deficiency. Pls.' Mem. [DE 33] at 7. The Court concludes that although Katsos Affidavit I is not a model of

clarity, the submission complies at least minimally with the Court's directives and, consequently, the Court will not award sanctions on that basis. Plaintiffs also request that if the Court denies sanctions, that Plaintiffs be permitted to "depose Ms. Katsos on these issues, so that they may fully explore the potential spoliation of evidence in this matter." Pls.' Mem. at 8 n. 2; *see id*. at 23. The Court finds that it would likely have been more efficient for Plaintiffs to have taken that deposition (or requested permission to do so) before filing the instant motion. Plaintiffs should not expect multiple "bites at the apple" here. Since the Court is setting a hearing on this matter, further activity as to depositions or additional briefing are held in abeyance pending that hearing. If, after the hearing on this matter, the Court concludes that further briefing is warranted, the Court will issue additional directives.

Turning to the merits of the motion, the central issue raised is Defendants Katsos' destruction of and/or failure to preserve electronic discovery. Specifically, Plaintiffs argue that because "computer data recovery is quite advanced, and evidence may be reconstituted even where data has been rewritten," Katsos should not have turned her broken computers over to a third party and permitted their destruction. Pls.' Mem. at 9. Plaintiffs also argue that when Katsos learned of her computer failure in 2009, she should have taken steps "to contact AOL and copy those e-mails to another location, print them out, or otherwise preserve them." *Id*. at 16. Plaintiffs do not request a specific sanction for this conduct, but rather request that the Court impose a sanction as it "may see fit." *Id.* at 23; *see id.* at 10.

A. **Duty to Preserve**

The first element a party must show when seeking sanctions for the destruction of evidence is "that the party having control over the evidence had an obligation to preserve it at the

time it was destroyed." *Chin*, 685 F.3d at 162; *Residential Funding Corp.*, 306 F.3d at 107. The Second Circuit has determined that "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu*, 247 F.3d at 436 (citing *Kronisch*, 150 F.3d at 126). Pursuant to this obligation, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake IV*, 220 F.R.D. at 217; *accord Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 108 (E.D.N.Y. 2012). "In this respect, 'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.'" *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). Therefore, "[w]hile a litigant is under no duty to keep or retain every document in its possession[,] it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake IV*, 220 F.R.D. at 217 (internal quotations and alterations omitted); *see Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009).

Plaintiffs identify several events which they claim triggered the duty to preserve. First, Plaintiffs argue that Katsos' duty to preserve arose as early as August of 2008, when Michael Distefano began questioning the propriety of Katsos' actions and the legality of the trusts. Pls.' Mem. at 12. The duty to preserve was also triggered at a point in 2008, Plaintiffs maintain, when, in a separate litigation, Katsos was purportedly put on notice that the transfers she facilitated on behalf of Plaintiffs were fraudulent. *Id*. at 12-15. Finally, Plaintiffs argue that

7

Michael Distefano's termination of Katsos on February 28, 2009 clearly triggered the duty to preserve. *Id*. at 15.

Defendants state that "[p]rior to the institution of the adversary proceeding against Ms. Katsos, she had no reason to believe that she was going to be sued . . . ." Defs.' Mem. [DE 41] at 9. Defendants go on to state that Plaintiffs' bankruptcy counsel told Katsos she was not a "hostile creditor" and Michael DiStefano "told her he felt bad he could not pay her outstanding bill for legal fees." *Id*. As a result of these purported statements, Defendants appear to take the position that they never anticipated any litigation and never had a duty to preserve documents. *Id*. at 8-9. Defendants do not even acknowledge that the initiation of this litigation triggered the duty to preserve and contend that "Plaintiffs have not established that defendants had obligation to preserve." *Id*. at 8.

The Court concludes that Katsos' duty to preserve documents arose as early as late February 2009, when Michael DiStefano terminated the attorney-client relationship between Plaintiffs and Defendants. On February 24, 2009, Michael Distefano sent Defendant Katsos the following letter:

> Dear Barbara,
>
> It is with regret that I must inform you that I am discharging you as my attorney regarding the Vendor Capital case and all other matters in which you have represented me, my wife Nicole, my mother Jo-Ann, Eversharp Trust, SharpImage Enterprises, LLC, effective immediately. At some time within the next three weeks I will communicate with you further, in writing, so as to explain the reasons why I am discharging you.
>
> Very your truly,
>
> Michael DiStefano

Aff. of Michael DiStefano in Supp. of Mo. for Sanctions [DE 32] ("DiStefano Aff."), Ex. C.

The receipt of Michael Distefano's letter provided sufficient notice to Katsos that Plaintiffs were terminating her representation for some reasons not yet full defined. The fact that DiStefano said he was "discharging" Katsos and would put the reasons in writing in the short-term should have raised enough of a red flag for Katsos to undertake some precautions. The duty to preserve arises, not when litigation is certain, but rather when it is "reasonably foreseeable." *Byrnie*, 243 F.3d at 107; *see In re Vitamin C Antitrust Litig.*, No. 05-CV-453, 2013 WL 504257, at \*9 (E.D.N.Y. Feb. 8, 2013) ("[T]he law is clear that the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, and that this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated.") (quotations omitted)); *Toussie v. Cnty. of Suffolk*, No. 01-CV-6716, 2007 WL 4565160, at \*6 (E.D.N.Y. Dec. 21, 2007). It is also worth noting that this letter followed the Distefanos purportedly questioning the legality of the trusts in the Summer of 2008 as well as the separate litigation involving the allegedly fraudulent nature of the transfers she facilitated on behalf of the Distefanos in 2008.

The language of Michael DiStefano's letter gives the appearance that Distefano was not satisfied with Katsos' work. Further, the word choice suggests not just a mutual parting of ways, but a desire to terminate the relationship "immediately," both with regard to the specific case at issue as well as all other matters being handled for DiStefano, his family and his businesses. In assessing whether litigation was reasonably foreseeable in these circumstances, the Court cannot ignore the fact that Katsos is an attorney and should have been attuned to the prospect of litigation. Although the inquiry is necessarily a fact specific one, the Court notes that several other courts have found that the duty to preserve attaches prior to the initiation of formal

9

proceedings. *See F.D.I.C. v. Malik,* No. 09-CV-4805, 2012 WL 1019978, at *1 n.1 (E.D.N.Y. March 26, 2012) (holding that duty to preserve arose when attorneys who allegedly destroyed documents represented the plaintiff in the underlying transaction at issue); *In re Semrow*, No. 03-CV-1142, 2011 WL 1304448, at *3 (D. Conn. March 31, 2011) (holding that duty to preserve vessel arose prior to commencement of suit because the fact that fatalities occurred should have put party on notice of future litigation); *Siani v. State Univ. of New York at Farmingdale*, No. 09-CV-407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010) (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve); *Schwarz v. FedEx Kinko's Office and Print Servs., Inc.*, No. 08-CV-6486, 2009 WL 3459217, at *6 (S.D.N.Y. Oct. 27, 2009) (holding that duty to preserve evidence arose when party received letter that gave it "good reason to anticipate imminent litigation"); *Creative Res. Gr. of New Jersey, Inc. v. Creative Res. Grp.*, 212 F.R.D. 94, 106 (E.D.N.Y. 2002) (concluding that the duty to preserve arose months prior to the commencement of the lawsuit when the problems that eventually led to the filing of the lawsuit first surfaced).

Defendants state the following in support of their argument that Katsos' receipt of the February 24, 2009 letter did not trigger the duty to preserve: (1) Michael Distefano failed to follow-up in three weeks as promised in the letters, and (2) Defendants need to depose Michael Distefano in order to "explore his reasons for discharging Ms. Katsos." Defs.' Mem. at 7-8. Distefano's reasons for discharging Katsos, though relevant to the underlying claims, are not essential to the inquiry before the Court. The question is whether, upon receipt of Distefano's letter, Katsos should have reasonably anticipated litigation. The Court believes that a reasonably

10

prudent attorney would have concluded that there was a significant problem with the client, even though not yet fully amplified, to warrant being summarily discharged.

Having concluded that the duty to preserve arose on or about February 24, 2009, the next step is to determine whether the destruction of evidence occurred prior to or after that date. Here, the acts upon which Plaintiffs base their motion are Katsos' destruction of her office computers and subsequent failure to preserve email communications knowing that the computers were destroyed. In her first affidavit, Katsos stated that the computers were destroyed at "some point after [her] representation of Mr. Distefano concluded and prior to 2010. . . ." Katsos Aff. I ¶ 6. In a subsequent affidavit, Katsos is even more vague with respect to the time frame, stating only that the "replacement of [her] office computers and loss of data all happened before the adversary proceeding was commenced against [her] in March of 2010." Aff. of Barbara H. Katsos dated May 2, 2012 [DE 40] ("Katsos Aff. II") ¶ 3. The Court need not pinpoint the exact date of the destruction for purposes of analyzing this prong of the standard test since there is no question that the destruction occurred after Defendant Katsos received the letter of termination from Michael Distefano.[2]

Because the Court concludes that the duty to preserve arose at least by the time Katsos' services were terminated – prior to the alleged destruction of documents – the Court does not address Plaintiffs' arguments that Michael Distefano's 2008 emails or statements made in other litigation triggered the duty. The Court does note, however, that the Second Circuit has found that a duty to preserve may arise at the inception of a relationship between the parties. In *Byrnie*, the Second Circuit held that in certain circumstances, "a regulation can create the requisite

---

[2] The Court finds Katsos' inability to recollect this important event troublesome.

11

obligation to retain records," even where litigation involving the records is not reasonably foreseeable. *See* 243 F.3d at 109; *accord Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 244, 249 (D. Conn. 2006). In *Malik*, the court considered the holding of *Byrnie* in the context of an attorney malpractice case. 2012 WL 1019978, at *1. There, the plaintiffs claimed that their former attorneys spoliated evidence and, they argued, that the duty to preserve arose from professional responsibility rules and attorney ethics opinions requiring lawyers to preserve electronic documents relating to a representation. *Id*. Noting that the argument was unopposed, the court concluded that the defendants' duty to preserve arose when they began representing the plaintiffs in the loan transaction at issue. *Id*.

Although it is not a "regulation," the Association of the Bar of the City of New York Committee on Professional and Judicial Ethics (the "Committee") has provided guidance on a lawyer's ethical obligations to retain and to provide a client with electronic documents relating to the attorney's representation of a client. *See* Assoc. of Bar of City of N.Y. Comm. on Prof. and Judicial Ethics, Formal Op. 2008-1 (July 2008) (available at http://www2.nycbar.org/ - Publications /reports/show_html_new.php?rid=794). The Committee gave the following opinion regarding document retention:

> As is the case with paper documents, which e-mails and other electronic documents a lawyer has a duty to retain will depend on the facts and circumstances of each representation. Many e-mails generated during a representation are formal, carefully drafted communications intended to transmit information, or other electronic documents, necessary to effectively represent a client, or are otherwise documents that the client may reasonably expect the lawyer to preserve. These e-mails and other electronic documents should be retained. On the other hand, in many representations a lawyer will send or receive casual e-mails that fall well outside the guidelines in

12

> our 1986 Opinion. No ethical rule prevents a lawyer from deleting those e-mails.
>
> We also expect that many lawyers may retain e-mails and other electronic documents beyond those required to be retained under our 1986 Opinion. For example, some lawyers and law firms may retain all paper and electronic documents, including e-mails, relating in any way to a representation, as a measure to protect against a malpractice claim. Such a broad approach to document retention may at times be prudent, but it is not required by the Code.

*Id*. § II. Moreover, as Plaintiffs point out, Rule 1.15 of the New York Rules of Professional Conduct provides that a lawyer must retain certain billing and financial records for seven years and the failure to do so may result in disciplinary action. *See* N.Y. Rule of Professional Conduct § 1201.15.[3] The Court will not undertake an analysis of whether the material Katsos destroyed was covered by the Committee's Opinion 2008-1 or the New York Rules of Professional Conduct since the Court has already ruled that Katsos had a duty to preserve the material at issue.

### B. Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007); *see Residential Funding*, 306 F.3d at 107-08. Failures to preserve relevant evidence occur "'along a continuum of fault - ranging from innocence through the degrees of negligence to intentionally.'" *Reilly*, 181 F.3d at 267 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)). In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed

---

[3] This Rule went into effect April 1, 2009. The prior version of the rule, however, contained a similar requirement. *See* New York Disciplinary Rule 9-102, 22 N.Y.C.R.R. § 1200.16 (repealed effective April 1, 2009).

13

'knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie*, 243 F.3d at 109) (internal alterations and emphasis omitted); *Curcio*, 283 F.R.D. at 111. "'In the discovery context, negligence is a failure to conform to the standard of what a party mut do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *In re Pfizer Secs. Litig.*, ---F.R.D.----, 2013 WL 76134, at *14 (S.D.N.Y. 2013) (internal quotations omitted); *accord Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 418-19 (S.D.N.Y. 2010)). A party is negligent even if the failure "results from a pure heart and an empty head." *In re Pfizer Secs. Litig.*, 2013 WL 76134, at *14; *Curcio*, 283 F.R.D. at 111.

Although the failure to institute a "litigation hold" is not negligence *per se*, whether the party implemented good document preservation practices is a factor that courts should consider. *Chin*, 685 F.3d at 162; *see Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010). The Court will also consider Katsos' status as an attorney and the fact that she certainly should have been aware of the preservation requirements of litigation. Courts have held that in an ongoing litigation, "[t]he preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Orbit One Commc'ns*, 271 F.R.D. at 437 (quoting *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 197-98 (S.D.N.Y. 2007)); *see also Elmo v. Callahan*, No. 10-CV-286, 2012 WL 3669010, at *12 (D.N.H. Aug. 24, 2012) ("[L]itigants (especially when they are lawyers) who act intentionally or with willful disregard to subvert their opponents' ability to find and offer relevant evidence should face harsh sanctions . . . ."); *Neverson-Young v. BlackRock, Inc.*, No. 09-CV-6716, 2011 WL 3585961, at *3 (S.D.N.Y. Aug. 11, 2011) (finding

plaintiff who donated her laptop "merely negligent" based on the fact that "[i]n contrast to corporate actors . . . [plaintiff] is unsophisticated and unaccustomed to the preservation requirements of litigation.").

Several other factual matters require consideration and clarification and the Court has determined that a hearing is necessary to explore the circumstances under which the alleged spoliation occurred. *See Malik*, 2012 WL 1019978, at *2 (scheduling hearing to determine attorney's culpability). At the hearing, Defendant Katsos should be prepared to testify regarding, among other things, the following areas:

1. Katsos' normal document preservation/retention/deletion/destruction practices;[4]

2. the number of computers utilized in her office prior to 2009, when the computers were purchased, and the specific circumstances surrounding the breakdown of each of those computers;

3. the service agreements for those computers and the vendor(s) used;

4. whether Katsos maintained a network server;[5]

5. AOL's automatic deletion policies to the extent they were explained to Katsos;

6. a complete list of every email address used by Defendant Law Offices of Barbara H. Katsos, PC and Defendant Barbara Katsos or her staff to communicate with Plaintiffs;

7. Katsos' attempts to gain access to the email accounts used by her paralegals and interns referenced in Paragraph 5 of Katsos Aff. II and page 16 of Plaintiffs' Memorandum;

---

[4] The Court notes that Katsos' representation that she was able to find emails from the period of her representation of Plaintiffs in her "sent" email box, but not in her "inbox," suggests that the emails in her inbox were deleted manually as opposed to automatically.

[5] The Court expects a definitive answer on this topic and does not accept Katsos' statement that "to the best of [her] recollection [the computers] were not linked by a network server." Katsos Aff. I ¶ 5.

8. the document preservation steps undertaken by Katsos when Plaintiffs instituted an adversary proceeding against her in March of 2010;

9. the retention and utilization of the services of Jan Sloboda.

If Katsos takes the position that she is unable to testify as to all of these topics, then she is directed to bring another individual from her office who can answer questions on these topics. Defendants are also directed to prepare a subpoena for the Court to "so order" directing Jan Sloboda, the individual whom Katsos hired to repair her computers, to appear at the hearing. The Court notes Defendant Katsos's representation that she does not know Jan Sloboda's "whereabouts or last known address." Katsos Aff. I ¶ 6. However, Defendants are directed to use reasonable means, including use of an investigative service if necessary, to locate this individual. Defendants purportedly utilized Jan Sloboda's services for over ten years, *see id*. ¶ 4, and it is therefore reasonable to assume that Jan Sloboda is in possession of information material to the issues presented here.

### C. Relevance of Evidence

Relevance may be assumed where the breaching party acted in bad faith or with gross negligence. *Neverson-Young*, 2011 WL 3585961 at *2; *Orbit One Comm'cns*, 271 F.R.D. at 441 (refusing to presume relevance where the evidence was merely destroyed due to the party's failure to abide by recommended preservation practices). However, where the spoliating party has acted only negligently, the moving party must make a showing that the lost materials were relevant. *In re Pfizer*, 2013 WL 76134, at *15; *Harakabi*, 275 F.R.D. at 419-20. A party may establish relevance by "'adducing sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the

party affected by its destruction.'" *Harakabi*, 275 F.R.D. at 420 (quoting *Residential Funding Corp.*, 306 F.3d at 109) (interanal alterations omitted). "Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction." *Residential Funding Corp.*, 306 F.3d at 109 (internal alterations and citations omitted); *accord Slovin v. Target Corp.*, No. 12-CV-863, 2013 WL 840865, at *5 (S.D.N.Y. March 7, 2013).

Because the state of mind of the alleged spoliator determines what standard is necessary to prove relevance, the Court cannot rule on this element without a hearing. The Court does note that, thus far, Plaintiffs have not established the relevance of the destroyed material. Plaintiffs "submit that it is impossible from their position (by nature of the spoliation), to ascertain what responsive documents and information were lost, and therefore show with particularity what requests have been adversely affected." Pls.' Mem. at 20. Plaintiffs then try to delineate "general categories of documents that have been adversely affected," including:

> (1) e-mails, both to and from Plaintiffs and Defendants, and to and from Defendants and third parties;
>
> (2) billing and invoices, as well as detailed attorney time records with which Plaintiffs might have reconstructed the services provided by, and actions taken by, Defendants;
>
> (3) internal e-mails (e.g. between Katsos and her paralegals, and Katsos and the now deceased "of counsel," Mr. Prounis); and
>
> (4) other ESI, including drafts of documents, electronically stored research (e.g. caselaw stored on the computer memoranda stored on the computer, calendars / electronic day planners / deadlines / litigation calendars stored on the computer.

Pl's. Mem. at 21. Merely laying out these categories does not satisfy Plaintiffs' burden of producing sufficient evidence from which the Court could infer that the categories listed were indeed destroyed. *See In re Pfizer*, 2013 WL 76134, at *21 (finding general description of the allegedly destroyed documents insufficient to establish relevancy); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 122-23 (S.D.N.Y. 2008) (same). The Court will, therefore, give Plaintiffs an opportunity to question Defendant Katsos at the hearing with regard to the third prong of the spoliation test.

This case is set down for a hearing, pursuant to Federal Rule of Civil Procedure 43(c) on May 13, 2013 at 10:00 a.m. in Courtroom 910. Defendants' counsel should be prepared to question his client at the hearing with regard to the topics delineated here. Plaintiffs' counsel will be permitted to question Defendant Katsos as well. Defendants are directed to provide the Court with the draft subpoena prepared for Jan Sloboda by April 15, 2013.

**SO ORDERED.**

Dated: Central Islip, New York
March 29, 2013

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge